**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SKIN LOGIC, LLC, | ) | Case No. 23-11352-KHK |
| | ) | Chapter 11, Subchapter V |
| Debtor. | ) | |
| | ) | |
| HARRY KAMIN, | ) | |
| Individually and on behalf of BNG Group LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. _____ |
| | ) | |
| SKIN LOGIC, LLC, | ) | |
| Serve: | ) | |
|     Valeria V. Gunkova | ) | |
|     2 Pidgeon Hill Drive, Suite 100 | ) | |
|     Sterling, VA 20165 | ) | |
| | ) | |
|     Stephen A. Metz, Trustee | ) | |
|     Offit Kurman, P.A. | ) | |
|     7501 Wisconsin Avenue, Suite 1000W | ) | |
|     Bethesda, MD 20814 | ) | |
|     Subchapter V Trustee | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

Marc E. Albert, No. 26096
Tracey M. Ohm, No. 77150
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 728-3020; Fax (202) 572-9943
marc.albert@stinson.com
tracey.ohm@stinson.com

Bethany R. Benes, No. 85408
BETHUNE BENES, PLLC
3975 Fair Ridge Drive
South Suite 246
Fairfax, Virginia 22033
Tel.: (703) 260-9322
bbenes@bethunebenes.com

*Counsel for Harry Kamin, individually and on behalf of BNG Group LLC*

Harry Kamin, both individually and derivatively on behalf of BNG Group LLC (collectively "**Plaintiffs**"), by and through counsel, bring their Complaint against Defendant Skin Logic, LLC d/b/a ARIA MediSpa ("**ARIA**" or "**Skin Logic**") and allege as follows:

## JURISDICTION

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b), and 11 U.S.C. § 523.  This case arises out of a Chapter 11 Subchapter V petition filed by ARIA in the United States Bankruptcy Court for the Eastern District of Virginia, Case No. 23-11352-KHK.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Plaintiffs consent to the entry of final orders or judgments by the Bankruptcy Court.

3.      Venue is proper pursuant to 28 U.S.C. § 1409(a).

## PARTIES

4.      Plaintiff BNG Group LLC ("**BNG**" or the "**Company**") is a limited liability company registered to do business in Virginia.  BNG owns the real property located at 2 Pidgeon Hill Drive, Sterling, Virginia 20165 (the "**Building**").

5.      Plaintiff Harry Kamin ("**Mr. Kamin**") is a resident of the state of Florida and is a 50% Class A Member of BNG.

6.      Defendant ARIA is a limited liability company registered in the Commonwealth of Virginia with its principal place of business located at Suite 100 of the Building.  Defendant ARIA is 100% owned by Valeria V. Gunkova ("**Ms. Gunkova**").  As admitted by Ms. Gunkova under oath on numerous occasions, Mr. Kamin is not and never has been a member of ARIA.

7.      Ms. Gunkova is also the other 50% Class A Member of BNG.[1]  Ms. Gunkova is also the sole owner of VNJ Management LLC ("**VNJ**") and Sterling Investments LLC ("**Sterling**

---

[1] Pursuant to this Court's Order and with Mr. Kamin's agreement, BNG is now controlled and operated by a Chief Restructuring Officer.

**Investments**").  Ms. Gunkova operates ARIA, VNJ, and Sterling Investments together with her boyfriend Jacob Bogatin ("**Mr. Bogatin**").

## FACTS

8.      Upon information and belief, Ms. Gunkova, with the assistance of Mr. Bogatin (whom Ms. Gunkova holds out to be her husband even though Mr. Bogatin is legally married to Galina Bogatin), formed ARIA in or around 2010 to operate a wellness spa in Loudoun County.

9.      Since in or around February of 2013, ARIA has operated its business in the Building pursuant to a Lease and various amendments thereto.  In each of its amendments, ARIA obtained additional space within the Building and the amount owed by ARIA for rent and expenses increased.

10.      While only a mere tenant of the Building and not an owner, Ms. Gunkova and ARIA made improvements to the suites leased by ARIA in the Building from 2013 to 2019, including but not limited to construction performed by PRC Construction Inc.

11.      Sometime in 2019, Ms. Gunkova was advised by then-owner of the Building, Judicial Drive Property Holding LLC (the "**Prior Owner**"), that it wanted to sell the Building. Realizing that all of the improvements made to the ARIA leased suites belonged to the Prior Owner as built-in fixtures of the Building and were therefore subject to transfer upon the sale of the Building (and that ARIA would potentially lose the use of those improvements and its leased suites), Ms. Gunkova, on behalf of ARIA and with the assistance of Mr. Bogatin, attempted to purchase the Building.

12.      Mr. Bogatin and Ms. Gunkova contacted Matthew Harris ("**Mr. Harris**") of REIL Capital LLC to assist in obtaining financing for ARIA to complete the purchase.  However, as a result of Ms. Gunkova's low credit score and debt, and ARIA's insufficient business assets and income, Ms. Gunkova and ARIA were denied financing for the purchase of the Building.

13.     Not wanting to give up on the opportunity to purchase the Building, Ms. Gunkova and Mr. Bogatin conspired to create a new company to purchase the Building.  However, as set forth in the Grand Jury Superseding Indictment attached hereto as **Exhibit 1,** Mr. Bogatin had been indicted by a grand jury on no less than forty-five (45) felony charges including (i) RICO conspiracy, (ii) wire fraud, (iii) mail fraud, (iv) securities fraud, (v) filing false reports with the SEC, (vi) falsification of books and records, (vii) money laundering conspiracy, (viii) and money laundering.[2]

14.     Ms. Gunkova and Mr. Bogatin created BNG on or about September 15, 2019 as a limited liability company in the Commonwealth of Virginia, with Ms. Gunkova being the sole member of BNG.  Upon information and belief, Mr. Bogatin was not included as a member out of fear that his known association with the new company and his pending criminal charges would destroy any chances of obtaining financing for the new company.

15.     Knowing that Ms. Gunkova and ARIA's financial condition was insufficient to obtain a loan, and that Mr. Bogatin's criminal charges would impede financing, Ms. Gunkova and Mr. Bogatin together decided that they would lure in a new partner to join the new company to provide the financial backing and clout to purchase the Building.

16.     Mr. Bogatin and Ms. Gunkova discussed potential victim investors and after other investors declined to participate, Mr. Bogatin and Ms. Gunkova ultimately agreed upon Mr. Kamin, whom Mr. Bogatin had known through one of Mr. Kamin's other businesses.  Mr. Bogatin knew that Mr. Kamin was a successful businessman and as a result, that Mr. Kamin would be able to provide the legitimacy that financial institutions indicated they would need to provide any loan for the purchase of the Building.

---

[2] The criminal case remains pending against Mr. Bogatin as of the filing of this Complaint.

17.    In or about February 2020, Mr. Bogatin appeared at Mr. Kamin's home to further his and Ms. Gunkova's plan.  Mr. Bogatin indicated that Ms. Gunkova was interested in buying the Building, that she had formed BNG to do so, that BNG was a legitimate company that rented office space located at Suite 120 of the Building, and that Ms. Gunkova and BNG needed Mr. Kamin's financial assistance and partnership to accomplish the purchase.  Mr. Bogatin, on behalf of Ms. Gunkova, represented that Mr. Kamin would be made a 50% Class A Member and Manager of BNG if he provided a $150,000 payment for the purchase of his membership interest.  Mr. Bogatin, on behalf of Ms. Gunkova, also represented that as Manager, Mr. Kamin would have full access to all Company bank accounts and that no decisions with regards to the Company would be made without Mr. Kamin's approval. Mr. Kamin, not knowing at that time about Mr. Bogatin's criminal activity, indicated that he would consider Ms. Gunkova's proposal and Mr. Bogatin's representations on behalf of Ms. Gunkova.

18.    To further Ms. Gunkova's and Mr. Bogatin's plan, Mr. Bogatin returned to Mr. Kamin's home on a second day.  During the visit, Mr. Bogatin, in furtherance of his plan with Ms. Gunkova, spent several hours trying to convince Mr. Kamin to go into business with Ms. Gunkova. Mr. Bogatin, on behalf of Ms. Gunkova, repeated Ms. Gunkova's prior representations that Mr. Kamin would be made a 50% Class A Member and Manager of BNG, have full access to the Company's bank accounts, and decision-making power for the Company.  Mr. Kamin agreed that he would visit to tour the Building and meet Ms. Gunkova in further consideration of Mr. Bogatin and Ms. Gunkova's proposal.

19.    On or about March 6, 2020, Mr. Bogatin and Ms. Gunkova on behalf of BNG submitted an offer to purchase the Building.  Mr. Bogatin and Ms. Gunkova contacted Mr. Harris, who had since left REIL Capital and joined Stryker Services LLC of Boynton Beach, Florida (the

"**Broker**"), to serve as BNG's broker in the purchase.  Mr. Bogatin and Ms. Gunkova handled all communications with the Broker.

20.     In or around early March 2020, Mr. Kamin travelled to Virginia for approximately one week per the parties' prior discussions.  Mr. Bogatin picked up Mr. Kamin from the airport and introduced him to Ms. Gunkova.  During his visit, Mr. Kamin explored the Building and attempted to speak with Ms. Gunkova about the business.  Mr. Kamin was informed that he was to direct all communications to Mr. Bogatin on behalf of Ms. Gunkova.

21.     During Mr. Kamin's visit, Ms. Gunkova and Mr. Kamin agreed to add Mr. Kamin as a 50% Class A Member and Manager of BNG in exchange for Mr. Kamin's buy-in contribution of $150,000.  Ms. Gunkova further represented and agreed that Mr. Kamin would have full access to the Company's bank accounts and that no decisions or actions could be taken for the Company without Mr. Kamin's approval.  As a result of Ms. Gunkova's promises, Mr. Kamin agreed and issued and endorsed two initial checks, each in the amount of $25,000.00 on March 8, 2020 for the purchase of his membership interest in BNG.

22.     Mr. Bogatin also represented to Mr. Kamin that additional monies were needed by BNG for the purchase of the Building.  Accordingly, Mr. Kamin agreed to loan funds to BNG in furtherance of the purchase.  Mr. Kamin issued and endorsed two additional checks, each in the amount of $65,000.00 on March 10, 2020 to cover the remaining $100,000 of his buy-in contribution and a $30,000.00 loan by Mr. Kamin to BNG.

23.     In April 2020, Mr. Bogatin, on behalf of Ms. Gunkova, again represented to Mr. Kamin that additional monies were needed for BNG's purchase of the Building, and again, Mr. Kamin agreed to loan money to BNG in furtherance of the purchase of the Building.  On April 15, 2020, Mr. Kamin loaned an additional $270,000.00 to BNG.

CORE/3529060.0002/185807089.1

24.     On or about May 14, 2020, Mr. Kamin again travelled to Virginia.  During Mr. Kamin's second visit, Mr. Bogatin, on behalf of Ms. Gunkova, provided Mr. Kamin with a document represented by Ms. Gunkova and Mr. Bogatin to be the Operating Agreement of BNG (the "**Operating Agreement**").[3]  The Operating Agreement was presented to and signed by Mr. Kamin which memorialized the terms agreed to by Mr. Kamin and Ms. Gunkova, including (i) Mr. Kamin and Ms. Gunkova each are a 50% Class A Member and Manager of the Company with an initial buy-in contribution of $150,000.00 each; (ii) Ms. Gunkova is prohibited from taking unilateral action for the Company without the approval of Mr. Kamin; and (iii) Mr. Kamin has full access and control of the Company's finances and bank accounts.  Mr. Kamin signed the Operating Agreement while at the Building but was not given the original signed Operating Agreement or a copy thereof at that time.  Mr. Bogatin represented to Mr. Kamin that Ms. Gunkova also signed the same Operating Agreement.  Mr. Kamin relied upon the statements of Ms. Gunkova and Mr. Bogatin, not knowing them to be false, and entered into the parties' agreements based on Ms. Gunkova's representations.

25.     As a result of Mr. Kamin's financial backing and personal financial status, BNG eventually obtained financing for the Building loan through Atlantic Union Bank.  Ms. Gunkova and Mr. Bogatin compiled all necessary documentation, including documentation from Mr. Kamin, and coordinated with Atlantic Union Bank to obtain the loan.

---

[3] The document recalled by Mr. Kamin looked similar to a document now known to be fabricated by Ms. Gunkova and Mr. Bogatin titled "Limited Liability Company Operating Agreement of BNG Group, LLC", a copy of which is attached hereto as **Exhibit 2.**  As set forth below, Mr. Kamin originally believed the document attached as Exhibit 2 to be the true and accurate Operating Agreement signed by Mr. Kamin and Ms. Gunkova because the document was provided to him and represented to be such document by Mr. Bogatin and Ms. Gunkova in November 2020.  Only after this litigation was filed did Mr. Kamin learn through a forensic analysis of the document by an expert handwriting and document examiner that Exhibit 2 was an altered document that lifted Mr. Kamin and Ms. Gunkova's signatures from another document signed by Mr. Kamin and Ms. Gunkova on October 30, 2020.

7

26.     Throughout May, June, July, August, September, and October of 2020, Mr. Bogatin continued to represent to Mr. Kamin that additional monies were needed for the purchase.  Mr. Kamin continued to provide monies to BNG based on Mr. Bogatin's representations.  Mr. Kamin ultimately contributed more than two million dollars to BNG to accomplish the purchase of the Building with the understanding that Mr. Kamin would eventually be repaid.

27.     On October 30, 2020, BNG, through Mr. Kamin and Ms. Gunkova, closed on the purchase of the Building.  BNG purchased the Building for $9,500,000, including the down payment provided by Mr. Kamin and what was to be included as the loan to the Company. Notably, the closing documents submitted and signed by Mr. Kamin and Ms. Gunkova list Mr. Kamin as both a 50% Member and Manager of BNG.  Copies of the relevant closing documents, which corroborate Mr. Kamin's 50% membership interest in BNG and his status as BNG Manager, are attached collectively as **Exhibit 3.**

28.     Unbeknownst to Mr. Kamin at the time of his agreement to join the Company, Ms. Gunkova never intended to fulfill the promises she made or that she and Mr. Bogatin represented to Mr. Kamin regarding his membership interest, his authority on behalf of the Company, and his access to financial accounts and Company information.  Ms. Gunkova and Mr. Bogatin simply made the representations to Mr. Kamin to induce Mr. Kamin into providing the finances Ms. Gunkova needed to purchase the Building and also to obtain Mr. Kamin's personal and financial information.

29.     Beginning in December 2020, Mr. Kamin discovered that Ms. Gunkova was violating the terms of the parties' BNG agreement, including but not limited to:

i.      Ms. Gunkova unilaterally hired employees for BNG without the knowledge or consent of Mr. Kamin;

CORE/3529060.0002/185807089.1

ii.    Ms. Gunkova unilaterally entered into lease contracts with third-party

tenants of the Building without the knowledge or consent of Mr. Kamin.

30.    On or about December 20, 2020, Mr. Kamin then learned of Mr. Bogatin's

indictment of the no less than forty-five (45) felony charges previously mentioned above and set

forth in Exhibit 1.

31.    As a result of Mr. Kamin's increasing concerns with his investment in BNG, Mr.

Kamin demanded that Ms. Gunkova and Mr. Bogatin send him the Operating Agreement signed

by Mr. Kamin and Ms. Gunkova and other relevant Company documents.

32.    Eventually, on or around January 2, 2021, Mr. Bogatin and Ms. Gunkova shipped

a box to Mr. Kamin containing three binders of documents.  The box contained the operating

agreement attached hereto as Exhibit 2 and was represented by Mr. Bogatin and Ms. Gunkova to

Mr. Kamin to be the Operating Agreement signed by Mr. Kamin on in May 2020.

33.    Throughout January and February 2021, Mr. Kamin requested Mr. Bogatin and Ms.

Gunkova provide him information related to BNG's bank accounts.  Ms. Gunkova and Mr. Bogatin

refused.  Mr. Kamin attempted to receive the information directly from the financial institutions

but was told repeatedly by such institutions that the accounts only authorized Ms. Gunkova to

request and receive such information.

34.    Mr. Kamin requested he be added as an authorized signatory to BNG's operating

account at TD Bank.  Ms. Gunkova again refused.  Ms. Gunkova instead offered to open a *new*

account and add Mr. Kamin as an authorized holder on the account.  Ms. Gunkova continued to

conceal BNG's financial accounts and the activity that took place using those accounts from Mr.

Kamin.

35.    Mr. Kamin then learned that, unbeknownst to Mr. Kamin, Ms. Gunkova signed an

agreement with a real estate broker to begin listing the Building for marketing and sale in or around

January 2021.  Ms. Gunkova did not confer with Mr. Kamin prior to taking actions to list the Building for sale, nor did she obtain his consent to take such action.

36.    On February 10, 2021, Mr. Kamin, by counsel, sent Ms. Gunkova a letter objecting to the sale of the Building and demanding certain information about the business of BNG (the "**Derivative Demand Letter**").  A copy of the Derivative Demand Letter is attached hereto as **Exhibit 4** and incorporated by reference as if fully set forth herein.

37.    Since receiving the Derivative Demand Letter, Ms. Gunkova has insisted that Mr. Kamin is not a 50% Class A Member and/or Manager of BNG.  Contrary to the Company's Operating Agreement (including the version provided to Mr. Kamin by Ms. Gunkova and Mr. Bogatin in January 2021), and documents submitted by Ms. Gunkova and Mr. Kamin to the banks on October 30, 2020, Ms. Gunkova then asserted that Mr. Kamin is only a 20% Class A Member, is not co-Manager, and is not entitled to any Company information or management.  To date, Ms. Gunkova continues to assert that she is sole Manager of BNG.[4]

38.    On March 8, 2021, Mr. Kamin filed suit against Ms. Gunkova in the Loudoun County Circuit Court throughout which Ms. Gunkova failed to comply with Court Orders compelling discovery.  As a result, Mr. Kamin was forced to issue numerous third-party Subpoenas to obtain key information about BNG – the Company that he was a 50% Class A Member and Co-Manager.

39.    In October 2022, the Loudoun County Court recognized Ms. Gunkova's persistent discovery violations and ordered a full turnover of all electronic devices used by Ms. Gunkova and Mr. Bogatin for forensic analysis (the "**Computer Forensic Order**").  Ultimately, thirty-four (34)

---

[4] In September 2023, Mr. Kamin filed a Motion with the Bankruptcy Court asking to remove Ms. Gunkova from management of BNG to preserve and protect BNG during the pendency of her personal bankruptcy case.  On October 23, 2023, Mr. Kamin and Ms. Gunkova agreed to appoint a Chief Restructuring Officer to have full control of the management and operations of BNG, which this Court approved on November 7, 2023.

CORE/3529060.0002/185807089.1

devices were analyzed, resulting in hundreds of thousands of results and evidence of intentional spoliation of evidence after the Computer Forensic Order was entered (the "**Computer Forensic Results**").

40.     Since filing his Complaint, Mr. Kamin has discovered, and continues to discover, that without Mr. Kamin's knowledge or consent, Ms. Gunkova and Mr. Bogatin, both individually and on behalf of ARIA, conspired and worked together beginning in 2019 and continuing to date to defraud and willfully injure Mr. Kamin and BNG by engaging in forgery, fraud, and intentional misconduct.

## The Forgeries

41.     In support of her position that Ms. Gunkova is 80% Class A Member of BNG, Ms. Gunkova produced numerous alleged governance documents of BNG unilaterally entered into by Ms. Gunkova without Mr. Kamin's knowledge and/or approval.  To accomplish their forgery and falsification of BNG governance documents, Ms. Gunkova and Mr. Bogatin worked together to forge Mr. Kamin's signature on documents and/or electronically sign documents on Mr. Kamin's behalf without his knowledge or consent.  Ms. Gunkova contended the documents were true and authentic, including the purported signatures of Mr. Kamin.

42.     Mr. Bogatin and Ms. Gunkova enlisted the help of notary public Kirk David Hilliard ("**Notary Hilliard**") of Capitol Mobile Notary, Virginia Registration No. 7839539, who Ms. Gunkova and Mr. Bogatin have repeatedly used for services to perpetuate their fraud and conspiracy that documents are in fact signed and notarized as they appear.  Bank records evidence that Ms. Gunkova and Mr. Bogatin have paid Notary Hilliard thousands of dollars for his participation in the fraud.

43.     Realizing that the alleged documents were not in fact signed by him, Mr. Kamin hired forensic expert Kristen Welch to analyze the BNG documents.  A copy of Ms. Welch's expert

report is attached hereto as **Exhibit 5.** Based on Ms. Welch's analysis and opinions, it was confirmed that Mr. Bogatin and Ms. Gunkova engaged in regular practices of forging signatures, including signatures of Mr. Kamin and third-party notary publics, by either signing the name of the alleged signatory or by lifting and copying authentic signatures from a source document to a new document, resulting in a forged signature.

44.    In October 2021, counsel for Ms. Gunkova and Mr. Bogatin stipulated that Mr. Bogatin signed Mr. Kamin's signature to all "Group 2" documents referred to in Ms. Welch's report.

45.    Mr. Kamin also learned through third-party discovery in the Loudoun County litigation that the forgeries of documents were not limited to internal governance documents of BNG. Mr. Kamin learned that Mr. Bogatin and Ms. Gunkova, armed with Mr. Kamin's personal identifiers and financial records as a result of the loan process for the purchase of the Building, continued their scheme throughout 2020, 2021, 2022, and 2023 by purporting to be Mr. Kamin to various entities and individuals including but not limited to the Small Business Administration, Atlantic Union Bank, TD Bank, EagleBank, Ascentium Capital, US Business Funding, Financial Partners Group, and Bank Five Nine.

46.    Mr. Bogatin and Ms. Gunkova, both individually and on behalf of ARIA, worked together to create numerous email addresses as early as March 2020 purporting to belong to Mr. Kamin, including harry@ariamedispa.com; harry@bnggroupllc.com; and grishak301@gmail.com. Mr. Bogatin and Ms. Gunkova, both individually and on behalf of ARIA, utilized the email addresses to exchange thousands of pages worth of emails to the SBA, financial institutions, and the Broker with a signature block affixed to the emails to give the appearance that Mr. Kamin was the sender and at various times, associated with ARIA. Ms. Gunkova knew that Mr. Bogatin created and used the email addresses to portray emails as coming from Mr. Kamin

and never notified the Broker, Atlantic Union Bank, or any others involved in the process that the emails were not in fact coming from Mr. Kamin but were instead coming from Mr. Bogatin.[5]

47.    Mr. Bogatin and Ms. Gunkova, both individually and on behalf of ARIA, also worked together to defraud Mr. Kamin and numerous financial institutions by submitting false information and forged documents appearing to be signed and/or submitted by Mr. Kamin for the benefit of ARIA, including but not limited to the following:

i.    **Exhibit 6: AUB 455-459**: A Personal Financial Statement allegedly signed by Harry Kamin and dated May 17, 2020 that was submitted by Ms. Gunkova and Mr. Bogatin to Atlantic Union Bank;

ii.    **Exhibit 7: AUB 849**: A Personal Financial Statement allegedly signed by Harry Kamin and dated May 20, 2020 that was submitted by Ms. Gunkova and Mr. Bogatin to Atlantic Union Bank;

iii.    **Exhibit 8: AUB 859-861**: A Personal Financial Statement allegedly signed by Harry Kamin and dated May 19, 2020 that was submitted by Ms. Gunkova and Mr. Bogatin to Atlantic Union Bank in support of a loan for ARIA;

iv.    **Exhibit 9: AUB 867-868**: An SBA Borrower Information Form allegedly signed by Mr. Kamin on May 20, 2020 that was submitted by Ms. Gunkova and/or Mr. Bogatin to Atlantic Union Bank in support of a loan for ARIA;

v.    **Exhibit 10: AUB 870-873**: An SBA Borrower Information Form allegedly signed by Mr. Kamin as "20%" owner and "Director" of Skin Logic and dated May 20,

---

[5] Mr. Kamin did not learn of the fraudulent communications using these email addresses until the emails were compelled by the Loudoun Court to be produced by Ms. Gunkova in the litigation after she originally refused to produce them.  Mr. Kamin was not (and still has not been) provided with the account login and/or password information, although he has requested such information.  Accordingly, Mr. Kamin did not and still does not have access to the account(s) and is unable to determine what, if any, emails are being sent by the account purportedly on his behalf or received by the account purportedly on his behalf.

CORE/3529060.0002/185807089.1

2020 that was submitted by Ms. Gunkova and Mr. Bogatin to Atlantic Union Bank for a loan application by ARIA in the amount of $4.4 million. (This document was also found on Ms. Gunkova and Mr. Bogatin's computers as a result of the Computer Forensic Order);

vi.     **Exhibit 11: AUB 869**: A General Authorization Form allegedly signed by Mr. Kamin and dated May 20, 2021 that was submitted by Ms. Gunkova and Mr. Bogatin to Atlantic Union Bank in support of a loan for ARIA while the parties were actively engaged in litigation in Loudoun County;

vii.    **Exhibit 12: GUNKOVA 38696:** A document entitled "General Authorization Form" allegedly signed by Mr. Kamin on June 8, 2020 as a member of both BNG and ARIA.

viii.   **Exhibit 13: AUB 2214-2247:** A document entitled "Limited Liability Company Operating Agreement of Skin Logic LLC [ARIA]" allegedly signed by Mr. Kamin as 50% member of ARIA and dated April 10, 2010. The document was submitted by Ms. Gunkova and Mr. Bogatin to Atlantic Union Bank in support of a loan request by ARIA. (In addition to being received in response to a Subpoena to Atlantic Union Bank, the document was also found on Ms. Gunkova and Mr. Bogatin's computers as a result of the Computer Forensic Order.)

ix.     **Exhibit 14: AUB 12352-12385:** A document entitled "Limited Liability Company Operating Agreement of Skin Logic LLC [ARIA]" allegedly signed by Mr. Kamin as 50% member of ARIA and dated April 10, 2020. The document was submitted by Ms. Gunkova and Mr. Bogatin to Atlantic Union Bank, EagleBank, Bank Five Nine in support of loan requests by ARIA. (In addition to being received in response to a Subpoenas to the aforementioned banks, numerous files of the

document were also found on Ms. Gunkova and Mr. Bogatin's computers as a result of the Computer Forensic Order.)

x.    **Exhibit 15:** A document entitled "Limited Liability Company Operating Agreement of Skin Logic LLC [ARIA]" allegedly signed by Mr. Kamin as 70% member of ARIA. (The document and an email transmitting the document were also found on Ms. Gunkova and Mr. Bogatin's computers as a result of the Computer Forensic Order.)

xi.    **Exhibit 16:** A Finance Application allegedly signed by Mr. Kamin in December 2020 as a 70% member of ARIA and submitted to Ascentium Capital in support of a loan request for ARIA.

xii.    **Exhibit 17:** A document entitled "Limited Liability Company Resolution of Skin Logic, LLC" allegedly signed by Mr. Kamin in February 2021 as a member of ARIA.

xiii.    **Exhibit 18: EAGLEBANK 527-528:** A document entitled "Limited Liability Company Resolution of Skin Logic, LLC [ARIA]" allegedly signed twice by Mr. Kamin as a member of ARIA and dated February 1, 2021.

xiv.    **Exhibit 19:** A document entitled "Resolutions of Members of Skin Logic LLC" allegedly signed by Mr. Kamin on April 11, 2020 as a member of ARIA.

xv.    **Exhibit 20:** A document entitled "Resolutions of Members of Skin Logic LLC" allegedly signed by Mr. Kamin on April 11, 2020 as a member of ARIA.

xvi.    **Exhibit 21:** A document entitled "Resolutions of Members of Skin Logic LLC" allegedly signed by Mr. Kamin on April 11, 2020 as a member of ARIA.

CORE/3529060.0002/185807089.1

xvii.    **Exhibit 22: EAGLEBANK 640-643:** A document entitled "Membership Interest Transfer Agreement" allegedly signed by Mr. Kamin as a member of ARIA on April 10, 2020.

xviii.   **Exhibit 23:** A Personal Financial Statement allegedly signed by Mr. Kamin on January 7, 2021 as a 50% member of ARIA (the native excel spreadsheet was located on Ms. Gunkova and Mr. Bogatin's computer as a result of the Computer Forensic Order).

xix.    **Exhibit 24: EAGLEBANK 488-491:** A document entitled "Guaranty" allegedly signed by Mr. Kamin as a member of ARIA on February 1, 2021 (just days before the Derivative Demand Letter was issued) and allegedly notarized by Notary Hilliard.

xx.    **Exhibit 25: EAGLEBANK 741-742:** A document entitled "Meeting of the Members Skin Logic LLC [ARIA]" allegedly signed by Mr. Kamin as a member of ARIA on April 30, 2021 (while the Loudoun County litigation was pending).

48.    Ms. Gunkova and Mr. Bogatin also fraudulently electronically signed ("**e-signed**") documents on behalf of Mr. Kamin without his knowledge or consent through the use of their fraudulent email addresses harry@ariamedispa.com and grishak301@gmail.com, including but not limited to:

i.    **Exhibit 26:** An "Account Verification Form" allegedly e-signed by Mr. Kamin as 100% member of ARIA on November 12, 2020 from IP address 71.126.149.50 using the email address grishak301@gmail.com.  (This document was obtained from the Computer Forensic Results).

     ii.    **Exhibit 27:** A Small Business Loan Application allegedly e-signed by Mr. Kamin as 50% owner of Skin Logic on December 22, 2020. (This document was obtained from the Computer Forensic Results).

49.    Knowing that Mr. Kamin did not in fact e-sign the documents referred to above, Mr. Kamin also hired computer forensic expert J. Christopher Racich, who had performed the analysis on the 34 Devices pursuant to the Computer Forensic Order, to determine where the documents were allegedly e-signed. Using and comparing metadata from the Computer Forensic Results, Mr. Racich determined that the IP address 71.126.149.50 used to e-sign Mr. Kamin's signature was associated with Ms. Gunkova and ARIA. A copy of Mr. Racich's report is attached hereto as **Exhibit 28**.

50.    Mr. Bogatin and Ms. Gunkova, on behalf of ARIA, used Mr. Kamin's identity and financial records to apply for and obtain financial loans– all without Mr. Kamin's knowledge or consent. To date, the total amounts received by Ms. Gunkova, ARIA, and Mr. Bogatin as a result of Ms. Gunkova and Mr. Bogatin's conspiracy and submissions of false information to the Small Business Administration and numerous financial institutions is believed to be more than $2.5 million.

51.    ARIA received funds obtained as a result of the fraudulent loan scheme, and transferred those funds to Ms. Gunkova, Mr. Bogatin, VNJ, and Sterling Investment. Ms. Gunkova and Mr. Bogatin then used fraudulent funds obtained from ARIA to pay hundreds of thousands of dollars in legal fees to Ms. Gunkova and Mr. Bogatin's personal attorneys, one of which was disqualified by the Loudoun County Circuit Court in June 2023 as a result of the apparent fraud committed by ARIA, Ms. Gunkova, and Mr. Bogatin. A copy of the Court's disqualification Order is attached hereto as **Exhibit 29.**

52.    As a result of the fraud perpetuated upon the financial institutions by Ms. Gunkova and Mr. Bogatin on behalf of ARIA, Mr. Kamin has been damaged by way of apparent personal liability of loans obtained by ARIA through the theft of his identity.

## Fraudulent Transfers

53.    In addition, Ms. Gunkova, individually and on behalf of ARIA, wrongfully exercised dominion and control over BNG's funds and assets by directing BNG funds to be transferred to herself, ARIA, Mr. Bogatin, VNJ, and Sterling Investment without Mr. Kamin's knowledge or consent.

54.    Ms. Gunkova directed BNG funds to be wrongfully transferred as follows:

- no less than $954,394.00 to ARIA;

- no less than $312,658.00 to Ms. Gunkova personally;

- no less than $5,000.00 to Mr. Bogatin;

- no less than $25,000.00 to VNJ; and

- no less than $60,000.00 to Sterling Investment.

55.    Ms. Gunkova also utilized BNG funds and credit cards to pay the personal expenses of herself and Mr. Bogatin, as well as expenses of ARIA.  Such expenses included personal vacations, personal car payments, cell phone payments, Mr. Bogatin's cosmetic dentistry bills, personal litigation expenses and attorneys, and personal shopping expenditures.

56.    Ms. Gunkova was in control of and operated each ARIA, VNJ, and Sterling Investment at the time the money was wrongfully converted from BNG.  As a result, ARIA, VNJ, and Sterling Investment were each aware that the money rightfully belonged to BNG and received the funds anyway.

57.    After Mr. Kamin filed his Loudoun County litigation, Ms. Gunkova also engaged in the transfer and dissipation of her assets in violation of Virginia's fraudulent conveyance statute, codified at Va. Code § 55.1-400, *et seq.* by making fraudulent and/or improper transfers.

58.    Specifically, since February 9, 2021, Ms. Gunkova has transferred no less than $53,517.00 to Mr. Bogatin and has transferred no less than $41,805.00 to ARIA.

59.    The transfers made by Ms. Gunkova were made for inadequate or no consideration for the conveyance under the threat of litigation by Mr. Kamin and BNG.

60.    Ms. Gunkova's transfers to Mr. Bogatin and ARIA were meant to hinder, delay, and/or defraud Mr. Kamin and BNG.

61.    The transfers resulted in the insolvency of Ms. Gunkova, who is without adequate funds and/or assets to satisfy the anticipated judgment(s) of Mr. Kamin and BNG.

62.    As a result of the fraudulent conveyances made by Ms. Gunkova to Mr. Bogatin and ARIA, Mr. Kamin and BNG are damaged through the impairment of their claims each as a creditor of Ms. Gunkova and has suffered damages in the amount no less than $94,322.00.

**Conspiracy to Benefit ARIA**

63.    As a Manager of BNG, Ms. Gunkova is vested with special confidence and has fiduciary duties to act in the best interests of the Company.  Ms. Gunkova, in her capacity as Manager of the Company, is required to perform her duties in compliance with the terms of the Operating Agreement and with the laws of the Commonwealth of Virginia.  Instead, Ms. Gunkova, with the assistance of Mr. Bogatin, engaged and continues to engage in misconduct to benefit herself and ARIA, including but not limited to:

  i.    converting BNG's assets, including large sums of money, to ARIA and herself without Mr. Kamin's knowledge and over his express objection to any such transfer;

ii.     fabricating a document purported to be a "Third Amendment to Office Lease Agreement" between BNG and ARIA, which included a backdated effective date of January 1, 2018, and reduced ARIA's monthly rent by $10,000 to the detriment of BNG;

iii.    using and co-mingling BNG funds to pay ARIA expenses, including payroll expenses of ARIA and personal expenses of Ms. Gunkova and Mr. Bogatin;

iv.     filing improper and false tax records of BNG, including co-mingling assets and liabilities of BNG and ARIA and misrepresenting member information such as member contributions;

v.      failing to enforce the lease agreements of BNG and ARIA, including failing to collect full and timely monthly rent from ARIA since December 2020, to benefit herself and ARIA in an amount no less than $602,934.70 in unpaid rent;

vi.     failing to enforce in favor of BNG and against ARIA alleged loan agreements between BNG and ARIA, including collection of alleged loan payments due by ARIA to BNG under the alleged agreements;

vii.    taking distributions from BNG without similarly making a proportionate distribution to Mr. Kamin as the other 50% member of BNG and even reducing Mr. Kamin's capital account to reflect a distribution to Mr. Kamin that never happened; and

viii.   willfully and persistently disregarding Mr. Kamin's rights as 50% Member and co-Manager of BNG.

64.     Ms. Gunkova, with the assistance of Mr. Bogatin, also fabricated numerous contracts alleged by Ms. Gunkova in the Loudoun County litigation to have been entered into by ARIA and BNG, including (i) an alleged "Short Term Loan Exchange Agreement" dated

CORE/3529060.0002/185807089.1

September 18, 2019, (ii) an alleged "Contract for Services" dated September 20, 2019, (iii) an alleged "Asset Contribution Agreement"[6] dated September 21, 2019, and (iv) an alleged "Loan Agreement" dated October 30, 2019. Without conceding that the alleged contracts are in fact authentic and enforceable agreements (and not just additional act of fraud by Ms. Gunkova and Mr. Bogatin), ARIA has failed to comply with any of the alleged contracts.

65.    The actions of Ms. Gunkova and Mr. Bogatin on behalf of ARIA were willful, were deliberate, and with regards to forgeries, were a knowing violation of criminal law.

66.    As a result of ARIA's fraud, forgery, and willful harm, BNG has been damaged as follows:

   i.    in an amount no less than $954,394.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999) and Va. Code § 13.1-1045 for ARIA's conversion of BNG funds; and

   ii.    in an amount no less than $41,805.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to Va. Code § 55.1-403 for its fraudulent and/or improper transfers in violation of Va. Code § 55.1-400, *et. seq.*

67.    As a result of ARIA's fraud, forgery, and willful harm, Mr. Kamin has been damaged as follows:

---

[6] Notably, while alleging that the Asset Contribution Agreement is valid and the assets listed on page 6 of the alleged Agreement were transferred by Ms. Gunkova to BNG in September 2019, Ms. Gunkova filed bankruptcy in this Court on behalf of ARIA and listed many of the same assets as assets of ARIA in August 2023.  See Schedule A/B filed in Skin Logic LLC Bankruptcy Case No. 23-11352-KHK.

i.   in an amount no less than $4,773,842.78, plus prejudgment interest, treble damages totaling no less than $14,321,528.34, and attorneys' fees, and costs for its conspiracy against Mr. Kamin;

ii.   in an amount no less than $2,500,000.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999) for its fraud against Mr. Kamin; and

iii.   in an amount no less than $41,805.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to Va. Code § 55.1-403 for its fraudulent and/or improper transfers in violation of Va. Code § 55.1-400, *et. seq.*

## COUNT I: DENIAL OF DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2) (Fraud - on behalf of Mr. Kamin)

68.   Plaintiffs incorporate, repeat, and re-allege all allegations set forth in the paragraphs above.

69.   Section 523(a)(2) of the Bankruptcy Code provides, in relevant part, that an individual debtor may not obtain a discharge from any debt –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive. . .

11 U.S.C. § 523(a)(2).

CORE/3529060.0002/185807089.1

70.     ARIA used deception, fraud, false pretense, and/or misrepresentations in connection with its conspiracy and fraud against Mr. Kamin to steal his identity and forge his signature on documents to seek and obtain financial loans for the benefit of ARIA, Ms. Gunkova, her related entities, and her boyfriend Mr. Bogatin.

71.     ARIA knew that the statements and documents it submitted to financial institutions and the federal government purporting to be Mr. Kamin were false.

72.     Ms. Gunkova and Mr. Bogatin, on behalf of ARIA, worked together with Mr. Bogatin to accomplish their scheme.

73.     Mr. Kamin has suffered damages as a proximate result of the false pretenses, false representations and/or actual fraud of ARIA:

    i.    in an amount no less than $4,773,842.78, plus prejudgment interest, treble damages totaling no less than $14,321,528.34, and attorneys' fees, and costs for its conspiracy against Mr. Kamin;

    ii.    in an amount no less than $2,500,000.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999) for its fraud against Mr. Kamin; and

    iii.    in an amount no less than $41,805.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to Va. Code § 55.1-403 for her fraudulent and/or improper transfers in violation of Va. Code § 55.1-400, *et. seq.*

74.     ARIA is not entitled to a discharge of any obligation to Mr. Kamin found to fall within 11 U.S.C. § 523(a)(2).

WHEREFORE, Mr. Kamin requests that this Court enter an order: (i) determining that ARIA is not entitled to a discharge of any indebtedness to Mr. Kamin as set forth above; and (ii) granting such other and further relief in favor of Mr. Kamin as the Court deems just and proper.

## COUNT II: DENIAL OF DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(4)
### (Embezzlement or Larceny - derivatively on behalf of BNG)

75.     Plaintiffs incorporate, repeat, and re-allege all allegations set forth in the paragraphs above.

76.     Section 523(a)(4) of the Bankruptcy Code provides, in relevant part, that an individual debtor may not obtain a discharge from any "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

77.     ARIA engaged in larceny in connection with conversion of BNG funds to itself and the receipt of funds fraudulently transferred to it for its benefit and to deprive BNG of the same.

78.     In the alternative, ARIA engaged in embezzlement of BNG funds by appropriating funds belonging to BNG for its own benefit, depositing those funds in an account accessible by ARIA and not BNG, and using those funds for its own purposes and not for the benefit of BNG.

79.     BNG has suffered damages as a proximate result of the embezzlement and/or larceny of ARIA as follows:

    i.     in an amount no less than $954,394.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999) and Va. Code § 13.1-1045 for ARIA's conversion of BNG funds; and

    ii.    in an amount no less than $41,805.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to Va. Code §

55.1-403 for its fraudulent and/or improper transfers in violation of Va. Code §

55.1-400, *et. seq.*

80.    ARIA is not entitled to a discharge of any obligation to BNG found to fall within

11 U.S.C. § 523(a)(4).

WHEREFORE, BNG requests that this Court enter an order: (i) determining that ARIA is

not entitled to a discharge of any indebtedness to BNG for the amounts set forth above; and (ii)

granting such other and further relief in favor of BNG as the Court deems just and proper.

## COUNT III: DENIAL OF DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6)
### (Willful And Malicious Injury - on behalf of Mr. Kamin)

81.    Plaintiffs incorporate, repeat, and re-allege all allegations set forth in the paragraphs

above.

82.    Section 523(a)(6) of the Bankruptcy Code provides, in relevant part, that an

individual debtor may not obtain a discharge from any debt "for willful and malicious injury by

the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).

83.    A debtor's injurious act done "'deliberately and intentionally in knowing disregard

of the rights of another' . . . is sufficiently willful and malicious, and prevents discharge of the

debt," even if the debtor bears the creditor no ill will.  *In re Stanley*, 66 F.3d 664, 667 (4th Cir.

1995).

84.    The conduct of ARIA was more than negligence, gross negligence or reckless

conduct and constitutes acts done with the actual intent to cause injury. ARIA 1) caused damages

to Mr. Kamin; 2) such injury was the result of an act of ARIA; 3) the act was both willful and

malicious.

85.    As a result of ARIA's misconduct, Mr. Kamin has been willfully harmed as

follows:

    i.     in an amount no less than $4,773,842.78, plus prejudgment interest, treble damages totaling no less than $14,321,528.34, and attorneys' fees, and costs for its conspiracy against Mr. Kamin;

    ii.    in an amount no less than $2,500,000.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999) for its fraud against Mr. Kamin; and

    iii.   in an amount no less than $41,805.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to Va. Code § 55.1-403 for fraudulent and/or improper transfers in violation of Va. Code § 55.1-400, *et. seq.*

86.    ARIA is not entitled to a discharge of any obligation to Mr. Kamin found to fall within 11 U.S.C. § 523(a)(6).

WHEREFORE, Mr. Kamin requests that this Court enter an order: (i) determining that ARIA is not entitled to a discharge of any indebtedness to Mr. Kamin for the amounts set forth above; and (ii) granting such other and further relief in favor of Mr. Kamin as the Court deems just and proper.

## COUNT IV: DENIAL OF DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6)
### (Willful And Malicious Injury - derivatively on behalf of BNG)

87.    Plaintiffs incorporate, repeat, and re-allege all allegations set forth in the paragraphs above.

88.    Section 523(a)(6) of the Bankruptcy Code provides, in relevant part, that an individual debtor may not obtain a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

89.    A debtor's injurious act done "'deliberately and intentionally in knowing disregard of the rights of another' . . . is sufficiently willful and malicious, and prevents discharge of the debt," even if the debtor bears the creditor no ill will.  *In re Stanley*, 66 F.3d 664, 667 (4th Cir. 1995).

90.    The conduct of ARIA was more than negligence, gross negligence or reckless conduct and constitutes acts done with the actual intent to cause injury. ARIA's actions were willful and malicious.

91.    As a result of ARIA's misconduct, BNG has been willfully harmed as follows:

i.    in an amount no less than $954,394.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to *Prospect Development Co. v. Bershader*, 258 Va. 75 (1999) and Va. Code § 13.1-1045 for ARIA's conversion of BNG funds; and

ii.    in an amount no less than $41,805.00, plus interest at the statutory rate, punitive damages in the amount of $350,000, and attorney's fees pursuant to Va. Code § 55.1-403 for her fraudulent and/or improper transfers in violation of Va. Code § 55.1-400, *et. seq.*

92.    ARIA is not entitled to a discharge of any obligation to BNG found to fall within 11 U.S.C. § 523(a)(6).

WHEREFORE, BNG requests that this Court enter an order: (i) determining that ARIA is not entitled to a discharge of any indebtedness to BNG for the amounts set forth above; and (ii) granting such other and further relief in favor of BNG as the Court deems just and proper.

Dated: November 20, 2023                Respectfully submitted,

                                     /s/ Tracey M. Ohm
Marc E. Albert, No. 26096
Tracey M. Ohm, No. 77150
STINSON LLP
1775 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
Tel. (202) 728-3020; Fax (202) 572-9999
marc.albert@stinson.com
tracey.ohm@stinson.com

and

Bethany R. Benes, No. 85408
BETHUNE BENES, PLLC
3975 Fair Ridge Drive
South Suite 246
Fairfax, Virginia 22033
Tel.: (703) 260-9325
bbenes@bethunebenes.com

*Counsel for Harry Kamin and BNG Group LLC*

CORE/3529060.0002/185807089.1